JAMES E. SELL, ESQ. (SBN 135935)
LYNCH, GILARDI & GRUMMER
A Professional Corporation
475 Sansome Street, Suite 1800
San Francisco, CA 94111
Telephone:  (415) 397-2800
Facsimile:   (415) 397-0937

Attorneys for Plaintiff
LANDING WAY DEPOT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANDING WAY DEPOT, INC.;<br>ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY,<br><br>          Plaintiff(s),<br><br>     vs.<br><br>ON SITE MARINE LLC; DE JONG &<br>LEBET, INC.,<br><br>          Defendant(s). | Case No.: 3:08-cv-01537-CRB<br><br>**DECLARATION OF ROBERT MCINTOSH IN SUPPORT OF LANDING WAY DEPOT, INC.'S OPPOSITION TO ON SITE MARINE LLC'S MOTION TO DISMISS**<br><br>Date: June 20, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 8, 19th Floor |

I, Robert McIntosh, declare and state:

1) I am the president of LANDING WAY DEPOT, INC. (hereinafter "LANDING WAY"), plaintiff in the above-entitled action. I know the following to be true of my own personal knowledge, and if called upon to do so, could and would testify competently thereto.

2) I am employed as the President of LANDING WAY. In my capacity as President, I am involved in all day-to-day operations of LANDING WAY. In my capacity as President I am familiar with the events and circumstances giving rise to this litigation, including but not limited to, assignment to LANDING WAY of the Contract for the Construction of Six Steel-Hulled Hopper Barges, LANDING WAY's retention of Bay Design & Engineering (hereinafter "Bay Design") for certain services, the sinking of the *Eva Joan* on July 4, 2006, and the salvage, clean-

1

up, and refurbishment work performed after the *Eva Joan* sank.

3) I have reviewed the Declaration of Michael Dismer in Support of Defendant's Motion to Dismiss the Complaint (hereinafter the "Dismer Declaration"). As explained further below, I find, based upon my personal knowledge, that there are material inaccuracies in Mr. Dismer's declaration.

4) I am informed and believe that on or about April 15, 2005, Corto Meno Sand & Gravel, LLC (hereinafter "Corto Meno"), entered into an agreement with defendant ON SITE MARINE, LLC, entitled "Contract for Design and Construction of Six Barges." On or about June 1, 2005, six weeks after the agreement was executed, LANDING WAY acquired by assignment Corto Meno's rights and obligations arising from the Design-Build Agreement. Attached hereto as Exhibit A is a true and correct copy of the executed assignment. When LANDING WAY assumed Corto Meno's rights and obligations under the contract, no work on the barges had begun. Thus, Mr. Dismer's references to Corto Meno's actions in connection with construction are incorrect with the exception of that in ¶2 wherein Mr. Dismer references the original parties to the contract.

5) The Contract for Design and Construction of Six Barges (hereinafter the "Design-Build Agreement") provided that ON SITE would be responsible for the development of the design documents necessary for construction, by and through design professionals retained by ON SITE, and that ON SITE would be responsible for the acts or omissions of those professionals.

6) Contrary to the Dismer Declaration at ¶3, LANDING WAY never agreed or otherwise approved that DE JONG & LEBET (hereinafter "DE JONG") would perform design services under the contract. Instead, during the course of construction LANDING WAY was informed that ON SITE had retained DE JONG as the naval architect for the design of the barges. I became aware of this retention through the ordinary course of communication with Michael Dismer of ON SITE, who notified me that DE JONG had been retained. LANDING WAY was not consulted regarding this selection, and LANDING WAY was not asked for its approval of this selection. In my role as President of LANDING WAY, had such approval been requested by ON SITE, I would

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

have been the person authorized to grant such approval. However, no approval of DE JONG was requested, and none was given by LANDING WAY.

7)   The representations of Mr. Dismer in ¶¶ 4 and 5 are also inaccurate. Prior to the sinking of the *Eva Joan*, LANDING WAY never insisted upon using a naval architect separate from that retained by ON SITE, and never insisted that a separate naval architect have the authority to modify DE JONG's plans. LANDING WAY further never required that a separate naval architect to take control over the design of the barge and modify DE JONG's plans. On or about May 16, 2006, LANDING WAY retained Bay Design to perform a limited review of the barge designs created by DE JONG. The scope of the retention was a limited design review to confirm that the design of the barges would be appropriate for carrying gravel on San Francisco Bay and connecting inland waterways including the Petaluma River. In connection with this retention, LANDING WAY paid Bay Design approximately $1500 for its services.

8)   LANDING WAY did not retain Bay Design to provide design services or to approve the work of DE JONG. I did not request or compensate Bay Design for such services. At no time did I inform ON SITE or DE JONG that LANDING WAY wanted Bay Design to assume or supersede DE JONG's design responsibilities. At no time did I inform Bay Design that LANDING WAY intended to supplant DE JONG's design responsibilities with its own.

9)   I am informed and believe as a result of my conversations with Joel Welter, Chief Naval Architect at Bay Design, that Bay Design provided comment to DE JONG relating to LANDING WAY's intended use of the barges to transport gravel on the Petaluma River. At no time did I tell ON SITE or DE JONG that Bay Design could or should assume control of the design responsibilities, or that Bay Design had LANDING WAY's authorization to change the plans as designed by DE JONG. I am informed and believe that DE JONG elected to make certain changes to the design of the barges in response to comments from Bay Design.

10)   After the July 4, 2006 collapse and sinking of the *Eva Joan*, and in connection with the clean-up and salvage plan developed to move and repair the sunken barge, LANDING WAY retained, Bay Ship & Yacht for various salvage and repair services. After the sinking of the barge,

Lynch, Gilardi
& Grummer
475 Sansome Street
Suite 1800
San Francisco, CA
94111
Ph (415) 397-2800
Fax (415) 397-0937

LANDING WAY was no longer comfortable with DE JONG's work, and retained other naval architects to redesign the *Eva Joan* and the other barges to be built under the contract.

11) Following the sinking of the *Eva Joan*, LANDING WAY hired The Glostens Associates of Seattle, Washington, to develop new designs for rebuilding the *Eva Joan*. The Glostens Associates redesigned the barge resulting in the dimensions referenced in ¶5 of the Dismer Declaration, which he incorrectly referenced as pre-sinking dimensions. Any plans referencing the modified barge dimensions relate to the post-sinking design plans created by The Glostens Associates and not to pre-sinking plans created by DE JONG.

12) I do not have any recollection of any discussion with anyone at ON SITE regarding the matters contained within ¶6 of the Dismer Declaration, and do not believe that I or anyone else at LANDING WAY had any such conversations with Mr. Dismer.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this ___30th___ day of May, 2008, at ___PETALUMA___, California.

ROBERT MC INTOSH
Landing Way Depot, Inc.

\\SFDATA\CONVERSION\0738-0047\MTN\179074.DOC

Lynch, Gilardi & Grimmer
475 Sansome Street
Suite 1800
San Francisco, CA 94111
Ph (415) 397-2800
Fax (415) 397-0937

4

# EXHIBIT A

## ASSIGNMENT CONTRACT

For value received, CORTO MENO SAND & GRAVEL, LLC (herein "Assignor") hereby assigns all its right, title, and interest in and to the contract entered into by and between Assignor and On Sight Marine Shipyards, LLC ("On Sight") to that certain contract dated April 15, 2005 ("Contract"), to Landing Way Depot Inc. ("Assignee").

The subject matter of the contract is the hiring of On-Sight to design and provide the necessary labor and materials for construction of six (6) vessels at 400 Hopper Street, Petaluma, California (hereinafter "The Work").

A copy of the contract, as described above, is attached to this assignment and incorporated herein by this reference. By this assignment, Assignor delegates to Assignee all of Assignors duties and obligations of performance of the contract. By accepting this assignment, Assignee agrees to assume and perform all duties and obligations that Assignor has under the contract, as if Assignee had been the original party to the contract. Assignee further agrees to indemnify and hold Assignor harmless for any liability performance or non-performance of the contract.

1. Time is of the essence of this assignment.

2. The assignment and each of the provisions shall be binding on and inure to the benefit of all the parties hereto, their shareholders and their respective assignees and successors in interest.

3. This assignment may be amended only by a writing signed by the party against whom or against whose successors or assigns enforcement of the charges sought.

4. If any term, provision, or application of this assignment is held invalid or unenforceable, the remainder of this assignment and any application of the terms or provisions shall not be effected thereby, but shall remain valid and enforceable.

5. This assignment shall be governed by and construed in accordance with the laws of the State of California.

Executed at Petaluma, California, on ___June 1___, 2005.

Assignor: Corto Meno Sand & Gravel, LLC    By _____

Assignee: Landing Way Depot, Inc.    By _____

RECEIPT AND CONSENT OF ASSIGNMENT

The undersigned, On Site Marine Shipyards, LLC (herein "On Site") hereby acknowledges and agrees to the following:

RECITALS

A.  On April 15, 2005, On Site did enter into a design and fabrication agreement for six (6) vessels (herein the "Contract") with Corto Meno Sand & Gravel, LLC (herein "Assignor").

B.  On June 1, 2005, Assignor did assign its entire right, title, interest and obligations under the contract to Assignee (herein the "Assignment", a copy of which is attached hereto and incorporated herein). The assignment from Assignor to Assignee was known and verbally acknowledged to by On Site; however, the parties failed to memorialize said assignment in writing.

C.  The parties' desire by this agreement to acknowledge the foregoing described assignment in writing.

Now, therefore, the undersigned On Site acknowledges receipt of the copy of the foregoing Assignment and Notice of Assignment, executed on June 1, 2005, and hereby consents to the same.

Executed at Petaluma, California, on September 29, 2006.

Assignor: Corto Meno Sand & Gravel, LLC     By _____
                                                Robert S. Bowen

On Site Marine Shipyards, LLC               By _____
                                                Michael Dismer, President